IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TERRANCE BROOKS,[1] #B51055,  )<br>  )<br>  Plaintiff,  )<br>  )<br>  vs.  )<br>  )<br>LATOYA HUGHES,  )<br>ANTHONY WILLS,  )<br>LT. BERNER,  )<br>JANE/JOHN DOE (Shift Commander), and  )<br>MAJOR GEE,  )<br>  )<br>  Defendants.  ) | Case No. 25-cv-01598-SMY |

# MEMORANDUM AND ORDER

**YANDLE, Chief Judge:**

Plaintiff Terrance Brooks, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. He claims defendants violated his rights by ignoring his medical permit for waist chain restraints, transporting him using the "black box" restraint, and injuring him. He seeks injunctive relief and monetary damages. (Doc. 1, p. 11).

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

---

[1] Plaintiff's first name is misspelled on the docket sheet as "Terrence." (Doc. 1, pp. 1, 12). The Clerk will be directed to correct the spelling.

## The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1): Plaintiff suffers from multiple serious medical conditions including type-2 diabetes, neuropathy, nerve complications, chronic pain, heart, stomach, and gastrointestinal problems, and general physical deterioration from over 30 years of incarceration (Doc. 1, p. 5). He sees a neurologist as well as specialists for his heart and GI problems. Plaintiff's prison doctor issued medical permits for him to be restrained with a waist chain and handcuffs instead of the "black box" (a form of handcuff restraint). The black box restraint aggravates Plaintiff's physical conditions and its use injured him in the past. The waist chain would avoid these effects.

On February 14, 2025, Plaintiff had a scheduled medical furlough to see the neurologist at Carbondale Hospital. He informed the security officials who attempted to place his hands in the black box of his medical permits. Those officers contacted the John/Jane Doe Shift Commander, who told them not to honor the permit (Doc. 1, p. 6). Plaintiff refused his medical furlough and did not have the scheduled treatment because his permit was not honored.

Plaintiff filed a grievance over the incident. The grievance response quoted an IDOC rule stating the black box is not required for all inmate transports. Instead, a waist chain or security belt, one set of handcuffs, and one set of leg irons/restraints are the minimum security measures for an inmate going out on a writ or furlough. The response acknowledged that Plaintiff had a waist chain permit for medical furloughs, valid until September 30, 2025, but according to the Chief of Security, security needs at the time of transport will dictate the type of restraints used (Doc. 1, pp. 6-7). Defendant Hughes denied Plaintiff's grievance.

Plaintiff filed another emergency grievance on March 27, 2025 regarding the waist chain permit. He spoke with the issuing doctor about the need for specificity in the permit (Doc. 1, p.

7). His conversation with the doctor was recorded on video and witnessed by C/O Westerman. The doctor wrote a new permit including the required specifications, but Sgt. Harris[2] immediately destroyed it (Doc. 1, p. 8). Later that day, Plaintiff listened to the doctor explain to Defendant Major Gee that Plaintiff needed the permit because of his serious medical conditions. He explained the black box could cause nerve damage, and Plaintiff's diabetes condition impairs wound healing and could lead to blood clots and life-threatening injuries. The eventual response to Plaintiff's grievance noted the video footage of Plaintiff's discussion with the doctor was no longer available and stated if no waist chain permit was in Plaintiff's medical file, he would be escorted in the standard black box restraint (Doc. 1, pp. 8-9). Defendant Lt. Berner (Security Specialist) was responsible for noting any medical waist chain permit on a writ packet. Plaintiff was advised to contact Berner and the medical department to make sure the permit information was recorded. Defendant Warden Wills deemed the grievance to be non-emergency on April 10, 2025. The grievance response admitted Plaintiff had a waist chain permit.

Meanwhile, Plaintiff had a medical furlough on April 4, 2025. He notified Lt. Phoenix and C/O Buttner of his waist chain permits, but they told him policy required them to use the black box regardless of any permit (Doc. 1, pp. 9). Shift Commander Lt. Benson was contacted but reiterated the black box policy (Doc. 1, p. 10). Plaintiff's previous injuries from the black box were aggravated by its use on this transport. He suffered pain in his left torso and wrist, and heart complications that required him to take a nitroglycerin pill and undergo an EKG upon his return to Menard.

Plaintiff requests injunctive relief requiring defendants to honor his waist chain permit (Doc. 1, p. 11).

---

[2] Sgt. Harris is not included among the defendants (Doc. 1, pp. 2-3).

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

> Count 1: Eighth Amendment deliberate indifference to serious medical needs claim against Hughes, Wills, Berner, the Jane/John Doe Shift Commander, and Gee, for refusing to honor Plaintiff's medical permit for waist chain restraints and instead using, directing, or allowing the use of the black box restraint, which injured Plaintiff and aggravated his serious medical conditions.

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

## Discussion

### Count 1

Prison officials and medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts suggesting (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* An objectively serious condition includes a condition that significantly affects an individual's daily activities or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). "[D]eliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015).

Plaintiff's allegations are sufficient to state a claim for deliberate indifference in Count 1

against Berner, the Jane/John Doe Shift Commander, and Gee. However, Plaintiff's allegations against Hughes indicate her only involvement in the matter was her denial of Plaintiff's February 14, 2025 grievance. Similarly, Plaintiff alleges only that Wills deemed his grievance a non-emergency. An official who merely reviews a grievance or appeal does not incur liability for the conduct that gave rise to the grievance. *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017). Nor can a supervisor be held responsible for misconduct by their subordinates. *Horshaw v. Casper*, 910 F.3d 1027, 1029-30 (7th Cir. 2018). Instead, to be liable under § 1983, a defendant must be personally responsible for the violation of a constitutional right. *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021). Hughes and Wills will therefore be dismissed from Count 1 and the action.

Count 1 will proceed only against Berner, the Jane/John Doe Shift Commander, and Gee. Plaintiff must identify the Doe Shift Commander by name before that individual can be notified of the lawsuit.

## Injunctive Relief

Because the Complaint includes a request for injunctive relief, the current Warden of Menard Correctional Center, in his/her official capacity, will be added to the docket regarding the request for injunctive relief. *See Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (warden is proper defendant for injunctive relief claim as he would be responsible for ensuring that any injunctive relief would be carried out).

## Unknown/John/Jane Doe Defendant

Plaintiff is responsible for securing information aimed at identifying the Jane/John Doe Shift Commander Defendant, in accordance with the John/Jane Doe Identification Order that will be entered separately. Once the name of the unknown defendant is obtained, Plaintiff must file a motion to substitute the newly identified defendant in place of the generic designation in the case

caption and throughout the Complaint. The Warden of Menard Correctional Center, in his/her official capacity only, will be added as a defendant for the purpose of responding to Plaintiff's requests for information regarding the identity of the Unknown Defendant.

## Disposition

The Complaint states colorable claims in Count 1 against Berner, the Jane/John Doe Shift Commander, and Gee. Latoya Hughes and Anthony Wills are **DISMISSED** without prejudice. The Clerk of Court is **DIRECTED** to correct the spelling of Plaintiff's first name to "Terrance" and to **ADD** the Warden of Menard Correctional Center, in his or her official capacity, to the docket for purposes of Plaintiff's claim for injunctive relief.

The Clerk shall prepare for Lt. Berner, Major Gee, and the Warden of Menard Correctional Center (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

DATED: February 26, 2026

            *s/ Staci M. Yandle*
            STACI M. YANDLE
            Chief U.S. District Judge

<u>**Notice to Plaintiff**</u>

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an

appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.